Our next case is ICRIS Technologies v. Point Blank Enterprises, 2023-2062. We're ready when you are, Mr. Ryerson. Thank you, Mr. Ryerson. Good morning. May I please the court, James Ryerson, joined by my colleague, Douglas Weider, on behalf of ICRIS Technologies. The ICRIS patents at issue in this appeal are directed to a potentially life-saving quick-release system for ballistic garments worn by soldiers and other first responders. The claimed ballistic garments include a pull cord operationally coupled to one or more releasable fasteners, such that when the pull cord is pulled, releasable fasteners release, the front and rear portions of the garment come apart. I'm very familiar with the technology and the records. You might want to jump right into your issues. Absolutely, Your Honor. The error in the district court's claim construction below stemmed directly from its inclusion of the word directly and its elaboration in its summary judgment decision on appeal, that a user must directly pull on the wires or cables as opposed to some type of handle or structure on the end of the pull cord. That finding, in turn, stemmed from the district court's ruling at claim construction, which it reiterated on summary judgment, that in the background section of the ICRIS patents, the inventors disclaimed pull cords having handles on the end. But that was a misunderstanding of the background section of the ICRIS patents. In the background of the ICRIS patents, they talk about prior art cutaway vests, which are held together by cables routed through a series of loops and eyelets. To oversimplify things, think of your shoelaces and your shoes. You have to lace the shoes through the eyelets in your shoes to hold the shoe together. The background of the ICRIS patents said that that structure was time-consuming and tedious. That lacing process was time-consuming and tedious. But that problem and that criticism of the prior art had absolutely nothing to do with the fact that there was a handle on the end of those cables. The ICRIS patents were in no way criticizing handles. It's just common sense that in an emergency situation, these are ballistic garments worn by soldiers. You don't want them flailing for some thin wire. You're going to want some type of pull cord, some type of structure on the end of the cord, and it could take many forms, but they'd be able to pull in that type of situation. Claim one recites that at least one pull cord operationally actuates at least one releasable fastener. Is there anything in the claim that talks about what actuates the pull cord? It talks about the pull cord actuating the release. But I didn't see anything in the claim that talked about what it was that actuated the pull cord, whether it's a handle or a lever or a direct engagement or otherwise. I agree, Your Honor. The claim is not limiting in terms of the structure of the pull cord. The claim defines the pull cord in terms of operationally how it's configured. It's operationally coupled to the releasable fasteners. But neither the claim nor the specification of the patent limit the structure of the term pull cord beyond the full scope of structures that a person of ordinary skill in the art would understand that a pull cord may take. That seems to be the big issue in this case to me. What is the ordinary meaning of pull cord? Is it a cord you pull? Is it any cord that could be pulled in any way, whether it's by a user or by something else? And I thought the district court made a big emphasis on the fact that there's a pull cord 16 in the figure that's actually called a pull cord. And then there's something that's a cord that's in turn pulled when the pull cord is pulled by a user. And it's not called a pull cord. It's just called a cord. And so the district court seemed to be suggesting that given the inventor's use of the word pull cord to mean something where that's the thing that's actually being pulled directly. That's how we came up with this interpretation of directly. What is your response to that? Good question, Your Honor. ICRIS isn't disputing that the pull cord itself must be accessible. It's not something that's internal within the vest. Forget about the internal external. I'm with you on that. OK. I don't think that internal external has bearing on the directly indirectly question. Because part of the cord, maybe the little ball at the end, could be outside the vest and somebody could pull it. Right? The question is whether the thing, the entity that's called a pull cord, has to be pulled directly or whether it could be pulled by a lever or pulled by a slide or pulled by something else. Well, it's our position that in the accused products, the lever is part of the pull cord. But let's talk about the ordinary. Specifically, the district courts looking at the specification and saying, when I look at what they're identifying as a pull cord, it is element 16, which is the thing that's pulled by the user. Then there's something called cord. It doesn't have the adjective pull in front of it. And it's only pulled indirectly. So the district court says, as a result of that, I think this inventor meant pull cord to be something that you actually pull. I have a second question for you, actually, which is, is there any evidence whatsoever in this record on what a pull cord is? Did anyone put it in a dictionary, technical information? There's nothing in our appendix. OK. I direct Your Honor to two different things. First, the specification. In every single embodiment, structurally, a pull cord has a round pull or handle on the end. That was figure 16. Unlike a cord, the pull cord is not just cordage. It has some type of structure on the end. That's figures 1A, 1B, 4, and 5 of the patent. So in every embodiment, there is a structure on the end of a pull cord. It's not limited to just cordage. A pull cord that has a structure at the end of it is a pull cord. A person born now of ordinary skill in the art would have to understand it as a pull cord. I just have, I'm confused as to what the understanding of a person of ordinary skill in the art would be for a pull cord. We have evidence in the record that enlightens that construction. There were four prior art patents discussed in the background of the Icarus patent. And each of those four prior art patents are part of the intrinsic record. This court has held that they may be a valuable guide in construing a claim term because they can shed light on the meaning of a claim term to persons of ordinary skill in the art. In all four of those patents, the term pull cord is used to refer to a handle on the end of four cables that users pull to activate the vest. And I can direct your honor, that's Appendix 6941, is one of those four prior art patents. They all say the same thing. But at 6941, that's one of those prior art patents that's part of the intrinsic record. Column four, your honor. What page are we on? 919. Appendix 6941, column four, line 19. Well, that just says a pull cord has a handle, right? As shown in figure four, pull cord 80 includes a handle attached to four cables, 82, 84, 86, and 88. How does that address the question? Let me put it this way. I can only think for me, but I agree with you. Pull cords can have handles. And there was no disclaimer of that. So could you focus us on the directly and indirectly in responding to my question about what a pull cord is? It, of course, isn't disputing that the pull cord has to be directly pulled. But it's not the wire or the cable of the pull cord that must be directly pulled. It could be any portion of the pull cord that's directly pulled, which includes the structure on the end. It could be a handle. It could be a loop. It could be a lever. Whatever a person of ordinary skill in the art would understand to be a pull cord, any portion of that can be directly pulled. Where the district court erred was saying that you have to directly pull on wires or cables as opposed to a handle attached to those cables. The hard part is that, yeah, if it's just a handle that the person pulls and then the cord goes with it, this seems like an integral unit. But if it's a lever and you pull a lever, that in turn moves a cord, is that a pull cord? Or is that a lever that in turn pulls a cord? Well, the evidence below, and this is from Icarus's expert, Dr. Jeanette, he testified that that was a pull cord. This is in opposition to defendant's summary judgment motion. This is appendix 5186, paragraph 22. Does that then become a factual? You would say that's a factual dispute? Yes. Dr. Jeanette says the lever acts as a handle at the end of the pull cord. And he opined that the accused products had a pull cord under that definition. Frankly, defendants haven't argued in this appeal that under Icarus's proposed construction, there are accused products lack of pull cord. And the district court made a number of findings that were consistent with the fact that if pull cord is construed, as Icarus is advocating in this appeal, the accused products, in fact, have a pull cord. This is the district court describing in the summary judgment decision how the accused products work. The district court said that in the accused products, a user pulls a handle that indirectly pulls the cables. But a handle affixed to cables is a pull cord. And we've illustrated the pull cord in the accused products It's at page 12 of the blue brief. You can see the accused products pull cord. On page 12, we have a picture of the accused vest on the left and the pull cord on the right. The pull cord is in the center of the vest. It has a handle attached to four wires. And when you pull that pull cord, it pulls on the wires. And it's the same as a pull cord in other contexts. Think of starting a lawnmower. There's a handle on the end of a rope that you pull. On a light switch, there's a tab on the end of a chain that you grasp to help pull the string. This is no different. When you pull that handle on the accused product, it pulls the cables. And Dr. Jeanette opined that that was a pull cord. Can I ask you a question about Dr. Incorvelance? So the district court entered a summary judgment of no infringement under the doctrine of equivalence for two reasons. One was about ensnaring the prior art based on handles. And I think you've got a argument with respect to that that you've made in your briefs. But the other one, for the quad only, was the district court held that there was no dispute of material fact, that there is a difference in the way the quad operates compared to the claims, because the quad's trigger will reduce the mechanical force necessary to disengage the connectors to detach the vest. That's a different way as a matter that no reasonable juror could find otherwise, basically, in granting summary judgment. But I don't see you challenge that anywhere in your blue brief or in your gray brief. Could you show me where that's challenged? Your Honor, we didn't challenge that exact point in the blue brief or the gray brief. The only thing I will say, and I notice I'm into my rebuttal time, is that Dr. Gennett didn't have the opportunity to put in a doctrine of equivalence argument under the correct construction. Dr. Gennett was bound by the court's claim construction. And so in his declaration in opposition to the summary judgment, he adhered to that construction. Could you explain why the claim construction matters for that finding in a different way? I mean, it has nothing to do with the claim construction. It's assuming that there is a difference. It's not literal infringement. It's doctrine of equivalence infringement, assuming that just the court's claim construction is correct. We're not arguing the different way in our opening or our reply brief. Thank you. Counsel will save your rebuttal time. Thank you. Mr. Flosky. Thank you, Your Honor. May it please the court. The district court's construction below was amply supported by the intrinsic record. And respectfully, this court should affirm. First, the court was correct in concluding that a cord within the term pro-cord must be a cord, not simply any component, which is what the plaintiff argued below. There is nothing in the claim language. I agree with that. That's an easy one. What about the disclaimer of handles? There is nothing in the patent's claim language, specification, or background section that supports the construction of a cord, including a handle. What about the fact that the figures all show a ball that could be a handle? We don't know what it is, Your Honor. It's not described. It's not labeled. It could be a knot on the end of the cord. But for sure, it is a long, slender, flexible material. Do you agree or do you dispute that pro-cords often have handles? In the prior art, pro-cords often had handles. In the background section of the patent in dispute, that's noted and rejected. Then what? Oh, so your argument depends on us reading the background of the invention section and saying that handles are criticized and disclaimed, right? It does not depend on that. That is one argument. Let's say that we don't agree with you on that. OK. Then what is your next argument? With respect to the handle, Your Honor, there is simply no disclosure of a handle or use of a handle. But if we agree that a pro-cord could have a handle, then why should we limit the claims to not have one? Because within the specification, there is no handle. It is clearly a long, slender, flexible material. There might be a tassel on the end of it. It's not described. It's not labeled. We don't know what it is. There's nothing in the record as to what that is. And below, to be clear. There are many cases where we have said, because even though a term in ordinary skilled art is an understanding, a term would understand that includes a certain element, the fact that the specification embodiments, the pervert embodiments, might or might not show that element shows that we should limit the claim to not have the element. I mean, the only situation I know of for such a reading would be lexicography or an express disclaimer. Well, here, I think if we read the patent as a whole, including the background section, setting aside a disavowal argument, there is no language in the specification or the claims that supports pro-cord with a handle. The patent team, the drafters of the patent, were fully aware of what they now claim that a skilled artisan would know, that a pro-cord can include a handle. Despite that, they go on and on in the background inspection with the prior art included. And then they tell us that this new invention includes a pro-cord with fewer components. And they go on to give us figures. And in every single figure, we have a cord, a long, slender, flexible device, as the lower court held, that is always accessible to the user and always on the ballistic garment, not inside the ballistic garment. Where in claim one does it specify that the pro-cord must be directly engaged by a user. So the word directly does not appear in the patent. And what's the basis for adding that limitation to the construction? I think the basis, Your Honor, is when you read the specification, the patent as a whole, the claims with the specification, the pro-cord is universally described, not just in one embodiment, universally described and depicted as accessible to the user. This invention only works if one can pull the pro-cord. There was no explanation of that. You could pull the pro-cord indirectly as well as directly. But in the patent itself, there is no description or explanation of an indirect pull. But the specification is broad enough to read on that. It's not limited to, I mean, I don't read the specification as being limited to the specific embodiments disclosed. Understood, Your Honor. But there are no embodiments disclosed. No description of how one would pull a pro-cord without actually grasping it and pulling it. None at all. Anywhere in the claims or the specification. But it doesn't matter. I mean, the description is, the discussion and the specification is all about actuating the release. Again, as I said at the outset there, I don't read the claim as reciting any limitation as to what it is that actuates the pull cord. The claim says the pull cord actuates the release and then leaves open anything else. I mean, the claim is just limited to that one, as I read it, to that one aspect of this invention. And what it is that triggers or actuates the pull cord is not part of this claim. Right. In the specification, there are two instances where the location of the pull cord is identified. And in both instances, in column two, it's on the protective garment. I think why that's significant as to the word direct. That's the written description. That's the description of the invention and an embodiment of how the invention might function. But the claims are directed to a certain aspect of that invention. This is as I read this. And the claim is not limited to everything described in the written description. And I don't see any basis for the district court's addition of the limitation of a direct engagement of that pull cord. I think the district court was reading those claims in connection with the specification and could find no intrinsic evidence to support any type of pull other than a direct one. I agree with you. I think the district court was reading the claim in light of the written description. And reading the written description into the claim, which is not proper. I think I would characterize the court's decision as reading the patent as a whole, consistent with Phillips. I don't believe there was an importation. There's no lexicography here, right? I would agree with that. There's no disavowal here. I do believe there's a disavowal argument. But I want to emphasize that is not the linchpin of the district court's decision. Where's the disavowal argument that you see? With respect to the handle, rather. Not the direct issue. And what is it that's disavowed? In the background section of the patent, the patentees disparage prior art of cutaway vests that include loop-through pull cords with handles. And after they describe that, they say, we have a new invention that includes. But doesn't what they criticize the fact that it's very difficult to re-thread the cord? They don't say it's very difficult to have handles. But they do say this, Your Honor. On column 2, lines 5 through 8, they say, accordingly, a protective outer garment having a quick-release system is needed that provides a reduction in operating parts. We have a background section that discusses prior art with handles. They tell us that they have fewer operating parts. And despite knowledge of that prior art, nowhere in the claims or the specification is there any mention of a handle. In fact, nowhere in the briefing below was there really an argument about the construction to say cord plus handle. The argument below was, that had to be a cord. I mean, the language reduction in complexity probably has to be read in light of what it is that they're distinguishing. And that reduction in complexity might just be referring back to this problem of having to re-thread after the vest is removed. They specifically refer to a reduction of operating parts. And that is after they describe prior art, specifically that includes pull cord with handle, an internal cord with a handle. How clear does a disclaimer have to be? Clear and equivocal. Not explicit, but clear and unequivocal. And I do want to emphasize, there's a lot of discussion in the appellant's brief about the disavowal disclaimer argument. Below, the district court spent three or four pages discussing this one term. Applied Phillips reached a conclusion. The disavowal disclaimer issue was not a linchpin or even a necessary basis for a conclusion. She was very clear that she felt disavowal disclaimer provided further evidence to support her construction. So it's not the linchpin. Can I ask you another question? Yes. Is there any evidence on what just the words pull cord means to a person born in Erie County, New York? And let me elaborate for a minute.  I saw the district court looking at what the specification referred to as a pull cord, which I think is element 16. And then there was another element called 18 that was just a pull, because it was only pulled indirectly. That seemed to be the district court's, I would say, strongest evidence for the directly-indirectly dichotomy. But is there anything else, like a dictionary definition or any books that tell us what a pull cord is? If a cord is just something that could be pulled, does that mean every cord is a pull cord? No, there was no evidence in the record other than the patent. So neither party put in any evidence? There was no extrinsic evidence at all and no dictionary definitions. With one caveat. In defining the word cord as part of pull cord, the court did rely on a basic dictionary definition, a long, slender, flexible material. But pull cord, there was no extrinsic evidence. An important point there is that we have a record here that includes claim construction and summary judgment. So there's expert materials in the records from both sides. There was no expert evidence submitted on claim construction. That was all on infringement. So the court's- Cord is almost plain meaning and pull is a functional term. The court, I would agree that the court applied a plain meaning of the word cord, opened a dictionary and said it must be a cord. And I think the court needed to address that because below the argument was it need not be a cord at all. It could be a component. That was a construction urge below, both in briefing and an oral argument. So the court needed to address whether this is a cord in the first instance. And then looking at the patent language, the court reached an inclusion on pull cord. I agree that one of the court's main items of evidence was that every figure in the patent and in the description of the patent, the cord is different from the pull cord. The word cord is used in the patent and it's not the pull cord. It's two different things. And in Figure 1A, for example, 16 is the pull cord shown on the vest. 18 is an internal cord that is moved and coupled to the releasable fasteners inside the vest. Let me address one issue on infringement, which Judge Stoll raised and I'd like to address. And it's about the operation of the accused devices. I want to clarify the record here. And the functionality of the accused device was not disputed below. The quad release, there is no pulling of a pull cord in the quad release. It is a trigger mechanism with four bowding cables. By bowding cable, I mean a wire inside a rubber housing. The user rotates a lever on the trigger, so rotates a lever on a fulcrum, no direct pull, which transmits amplified force to the bowding cables, which then leads to the release of the buckles. That was undisputed below. We put in, our engineer designer put it in declaration with all the drawings, explained that. In opposition, Iqus' expert just said in conclusive fashion, that's the equivalent of a pull cord with a handle. District Court appropriately noted that that's not a rebuttal evidence. Is the bowding cable not a pull cord? It is not. Why not? It is not because, well, first of all, under the court's construction, it's not directly pulled. It can't even be accessed. It's inside. No, but I'm just asking you the question, apart from the court's construction, the bowding cable is coupled to the release mechanism. And when actuated, causes the release, correct? The bowding cable is coupled on one end to releasable buckles. Why would that not be a pull cord? I believe it's not, Your Honor, within the meaning of the patent. I know you don't believe it. My question is why? Even if we assume the pull cord has a handle, there is no pulling of the pull cord in the Iqus device. There's an activation of a trigger rotating a lever on a fulcrum. Well, there's a pulling of the bowding cable. The wire inside the cable moves to force the buckle release. Well, let's not get hyper-technical. The wire inside the bowding cable is pulled. It becomes taut. It's not pulled by the user, but it does become taut, which forces the release of the buckle through the rotation of a lever. Dancing on the head of a pin here. Well, I think you're right. I think the Iqus device has functioned in a fundamentally different way than the pull cord as claimed and disclosed in the patent, even if we were to assume the pull cord has a handle. Does the claim include a handle as a limitation? No. It is not. So that claim is not limited to pull cords with handles. It is not. I don't know if I'd use the word limited. The claim does not recite pull cords with handles at all. That's a limitation. So the limitation is missing. My understanding is, and I think you'd agree with me, that because that limitation is missing, the claim is broad enough to read on a pull cord without a handle. Correct? Where I disagree with that is not when read within the context of the patent. Okay. I think we'll have to pull the cord on you. Thank you, Counselor. Mr. Ryerson has a little rebuttal time. Thank you. May it please the Court, I just want to address Counsel's statements that the Iqus patents do not show a handle at the end of the pull cord. In the claim construction briefing below in describing the Iqus patents, this is at Appendix 2386 of their briefing, defendants wrote, the pull cord includes a tab or bead on the end to facilitate gripping. Whether you call it a tab, a bead, or a handle, there's structure on the end to facilitate gripping. There was no disavowal here. There was no lexicography. And Counsel admitted in the prior art that skilled artisans used the term pull cord to refer to cords with handles on the end. And then the Iqus patent claims the term pull cord is entitled to that full scope. Unless the panel has any other questions, that's all the points for today. Thank you to both Counsel. The case is admitted.